# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **WESLEY PURCELLA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 12-1094-JWL** |
| **CAROLYN W. COLVIN,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security income (SSI) benefits under sections 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSI on July 13, 2009, alleging disability beginning January 16, 2009. (R. 12, 93-96). The application was denied administratively, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 12, 44-50, 56-57). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ E. William Shaffer on March 30, 2011. (R. 12, 24-26). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 12, 24-43). ALJ Shaffer issued his decision on April 15, 2011 finding that although Plaintiff has severe impairments within the meaning of the Act, those impairments do not meet or medically equal the criteria of a listed impairment, and that Plaintiff has the residual functional capacity (RFC) to perform his past relevant work as a security guard as that work is generally performed in the economy. (R. 12-20). Consequently, he concluded that Plaintiff is not disabled within the meaning of the Act, and denied his application. Id. Plaintiff sought Appeals Council review of the ALJ's decision, and submitted a Representative's Brief. (R. 8, 128-29). The Appeals Council made the brief a part of the administrative record, but determined that it did not provide a basis for changing the ALJ's decision. (R. 3). It found no reason under the rules of the Social Security Administration to review the decision, and denied the request for review. (R. 2). Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner; (R. 2); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).

When deciding if substantial evidence supports the ALJ's decision, the mere fact that there is evidence in the record which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and noting that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").  Moreover, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if he can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084.  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot,

considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 416.920 (2011);[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

---

[2]Because the Commissioner's decision was issued on April 15, 2011, all citations to the Code of Federal Regulations in this opinion refer to the 2011 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2011, unless otherwise indicated.

economy.  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  <u>Blea</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>, <u>Dikeman v. Halter</u>,

245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are

within the RFC assessed.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Here, the ALJ made his decision at step four of the process, and did not continue to

evaluate step five.

     Plaintiff claims the ALJ erred by failing at step four to determine the actual

demands of his past relevant work as a security guard, and by discounting the treating

source opinions of Dr. Campbell and Dr. King based on legally insufficient reasons.  The

Commissioner argues that the ALJ determined that neither Dr. Campbell nor Dr. King

qualifies as a treating source, and properly discounted their opinions, and that the ALJ

properly analyzed the demands of Plaintiff's past relevant work.  The court finds no error

in the ALJ's evaluation of past relevant work or in his evaluation of the treating source

opinions.  It addresses those issues in the order of the sequential evaluation process.

**III.**    **Evaluation of the Medical Opinions**

     Plaintiff argues that Dr. Campbell and Dr. King are plaintiff's treating physicians

(Pl. Br. 8) and that the ALJ erred in discounting the physicians' opinions based upon his

determination of Plaintiff's credibility, <u>id.</u> at 9, and based upon the fact that the opinions

were requested by Plaintiff's counsel.  <u>Id.</u> at 10.  The Commissioner argues that the ALJ

properly determined that neither Dr. Campbell nor Dr. King are treating physicians, that

Plaintiff cites no contrary evidence, and that this is a sufficient basis to discount the

opinions.  (Comm'r Br. 4-6).  In his Reply Brief, Plaintiff argues that the ALJ in fact

treated both physicians as treating sources, and that the Commissioner's contrary

argument is impermissible post-hoc rationalization.  (Reply 1-3).

### A.    Standard for Evaluating Treating Physicians' Opinions

A physician who has treated a patient frequently over an extended period of time

(a treating source)[3] is expected to have greater insight into the patient's medical

condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).  "If [the Commissioner] find[s] that a treating

source's opinion on the issue(s) of the nature and severity of [the claimant's]

impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in

[claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R.

§ 416.927(d)(2); see also, Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  After considering the factors, the ALJ

must give reasons in the decision for the weight he gives the treating source opinion, and

"if the ALJ rejects the opinion completely, he must then give 'specific, legitimate

reasons' for doing so."  Id. 350 F.3d at 1301 (citing Miller v. Chater, 99 F.3d 972, 976

(10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.**      **The ALJ's Evaluation**

The ALJ summarized and assessed the weight accorded to Dr. Campbell's and Dr.

Kings opinions:

> In March 2010, examining physician Velma Campbell, MD, signed an
> eligibility statement for State assistance payments, indicating the claimant
> would remain disabled for six months or longer and had been disabled since
> 1999.  The claimant completed a section indicating he had a 9th grade
> education and was disabled because of emphysema, a hernia and bad knees
> (Exh. B7F [(R. 177)]).  In March 2011, Richard King, MD, completed a
> similar form, indicating the claimant would remain totally and permanently
> disabled and unable to work (Exh. B5F [(R. 168)]).  But [(A)] without an
> explanation of the standards used to determine that the claimant was
> disabled, [(B)] without a description of the objective findings used for the
> conclusion of disability, and [(C)] without mention of the specific
> limitations that support such statements, the undersigned is unable to give
> these opinions [on the state assistance forms] any weight.

> In November 2009, a physician's assistant from the community health
> center told the claimant she did not feel he qualified for disability, and
> advised him to establish care with a medical doctor (Exh. B8F [(R. 178-
> 89)]).  But in January 2011, a physician from the community health center-
> Dr. King-completed a residual functional capacity form for counsel, noting
> he had examined the claimant only on that date.  He said he was treating the
> claimant for COPD and degenerative disc disease of the cervical and
> lumbar spine.  Dr. King limited the claimant to lifting and carrying no more
> than 10 pounds, sitting for no more than six hours or two hours at a time,
> and remaining on his feet for no more than four hours or one hour at a time.
> He recommended no stooping, rare squatting and crawling, and occasional
> kneeling (Exh. B9F [(R. 190-92)]).  In February 2011, Dr. Campbell, who
> had examined the claimant in March 2010, agreed with Dr. King's

conclusions, in response to another request by counsel (Exh. B10F [(R. 193)]).

The opinions of treating physicians are entitled to controlling weight if they are well supported by the medical evidence and not inconsistent with other substantial evidence (SSR 96-2p). While it is questionable whether Dr. King had established a treatment relationship with the claimant at the time he completed the evaluation, nonetheless, his conclusions are not given controlling weight. He bases his restrictions on both orthopedic and pulmonary concerns, but the objective support for the lower back condition is minimal, while that for the cervical spine is completely absent from the record (Exh. B2F [(R. 142-60)]). And while the evidence of COPD is more compelling, the indications of noncompliance with prescribed respiratory medicines is equally persuasive that the claimant prefers to pursue an ineffective treatment regimen (Exhs. B2F; B4F; B8F [(R. 142-60, 166-67, 178-89)]). Since the doctor's opinions are not well supported by acceptable clinical findings, they are not accorded controlling weight (Robinson v. Barnhart, 366 F.3d 1078 (10th Cir. 2004), quoting Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); cases more recently cited in Besson v. Astrue, No. 06-cv-01263-LTB (D. Colo. 04/10/2007). Furthermore, little weight is accorded Drs. King's and Campbell's opinions, which are [(1)] discrepant with the evidence as a whole, showing minimal changes in the lower back, variable oxygen saturations and poor adherence to medications designed to lessen his breathing difficulties (Id.). The undersigned accepts that the claimant would require some degree of postural limitation, but these conclusions, as a whole, are [(2)] inconsistent with the evidence of minimal musculoskeletal issues and [(3)] place too great emphasis on an ineffectively, or untreated, condition, which [(4)] appears to be within the claimant's capacity to better manage (SSR 82-59).

(R. 18-19) ("bullets" omitted, numbering and lettering added for ease of discussing ALJ's rationale).

## C.    Analysis

Both parties paint with too broad a brush when addressing whether Dr. Campbell or Dr. King qualify as, or were regarded by the ALJ as, treating physicians. The court

will address each physician individually, as did the ALJ. As the first line of the quotation above reveals, the ALJ specifically identified Dr. Campbell as an "examining physician." (R. 18). This is a "non-treating source" as defined in 20 C.F.R. § 416.902 (see footnote 3 above). Plaintiff points to no record evidence establishing error in this finding by the ALJ. Moreover, Plaintiff recognized Dr. Campbell as an examining physician when he sought Dr. Campbell's agreement with Dr. King's opinion in February, 2011. (R. 193) ("Were these restrictions valid when you examined Mr. Purcella on 3/18/2010?"). In the last sentence of the second paragraph of the quotation above, the ALJ relied upon this document and noted that "Dr. Campbell, who had examined the claimant in March 2010, agreed with Dr. King's conclusions." (R. 19) (citing Ex. 10F (R. 193)). The ALJ regarded and considered Dr. Campbell as a non-treating source physician, and substantial record evidence supports this finding.

In the second paragraph of the quotation above, the ALJ discussed Dr. King's treatment and his RFC assessment with regard to Plaintiff's abilities and limitations. (R. 18-19). He specifically noted both Dr. King's statement that he was providing medical treatment for Plaintiff for COPD (chronic obstructive pulmonary disease) and degenerative disc disease (R. 190), and Dr. King's statement that he had had only one visit with Plaintiff. (R. 192).

In the last paragraph of the quotation above, the ALJ considered whether Dr. King's RFC opinion and Dr. Campbell's agreement with that opinion should be accorded controlling weight. He questioned whether Dr. King was a "treating physician" within

11

the meaning of the regulations based upon only one visit with Plaintiff, but determined that question need not be answered because even if Dr. King were a treating physician, his opinion could not be given "controlling weight." He based this conclusion on a finding that "the doctor's opinions are not well supported by acceptable clinical findings." This is an adequate reason to deny controlling weight, <u>Watkins</u>, 350 F.3d at 1300; 20 C.F.R. § 416.927(d)(2), and Plaintiff points to no record evidence which precludes this finding. The ALJ did not decide whether Dr. King is a treating physician, but determined that even if he is a treating source, his opinion may not be given "controlling weight." Plaintiff has shown no error in this finding.

In the last two sentences of the last paragraph of the quotation above, the ALJ provided four reasons, based upon the regulatory factors for evaluating medical opinions, to discount the RFC opinion of Dr. King and the agreement of Dr. Campbell, and accorded each opinion "little weight." (R. 19).[4] While it is true that the last two reasons given by the ALJ to discount the RFC opinions relate to his findings regarding the credibility of Plaintiff's allegations, it is equally true that physicians who have examined (or treated) a client only once, such as Dr. Campbell, or Dr. King when he provided his

---

[4]In the first paragraph of the quotation above, the ALJ had already explained that he could accord no weight to the opinions contained in the state assistance forms completed by Dr. Campbell and Dr. King because they did not contain (A) an explanation of the standards used, (B) a description of the objective findings used, or (C) any mention of the specific limitations that support the opinions. (R. 18) (quoted at page 9, <u>supra</u>). Plaintiff does not allege error in this rationale.

RFC opinion,[5] would likely place "too great emphasis" on Plaintiff's subjective reports and would not be aware of Plaintiff's apparent unwillingness to comply with the treatment provided. Moreover, Plaintiff makes no attempt to show error in the other reasons given to discount the medical opinions.

Finally, the rationale given for discounting the medical opinions provides no basis for Plaintiff's argument that the ALJ implicitly discounted the physicians' opinions because they were requested by counsel. To be sure, the ALJ recognized that the opinions were requested by counsel, but he did not state that he discounted them on that basis, he explained his bases for discounting the opinions, and Plaintiff points to no evidence otherwise. Plaintiff has shown no error in the ALJ's evaluation of the medical opinions of Dr. Campbell or of Dr. King.

## IV.    Demands of Past Relevant Work as a Security Guard

Plaintiff claims "the ALJ erred in failing to determine the actual physical and mental demands of Plaintiff's past relevant work at step four" of the evaluation process. (Pl. Br. 4) (capitalization omitted). In his argument Plaintiff implies that the vocational expert provided no testimony regarding the demands of Plaintiff's past relevant work as a security guard and points out that no testimony was elicited from Plaintiff at the hearing

---

[5]The court is aware that Plaintiff testified that he saw Dr. King twice (R. 30) and that Dr. King completed a state assistance form in March, 2011 (R. 168). However, Dr. King stated in his RFC opinion dated January 25, 2011 that he had only one visit with Plaintiff up to that time (R. 192), so the second visit and completion of the state assistance form occurred after Dr. King's RFC opinion was formed.

about the demands of his past relevant work.  He concludes, "In short, nothing in the record speaks to the actual physical and mental demands of plaintiff's past work except on a form he completed indicating that he was on his feet eight hours a day at this job, evenly split between standing and walking."  Id. at 5 (citing R. 114).

Plaintiff then points out that SSR 82-62 requires an ALJ to make specific findings of fact in his decision regarding the physical and mental demands of past relevant work, and that the Tenth Circuit has included these findings as phase two within the step four requirements in a decision.  (Pl. Br. 5-6) (citing Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996); Henrie v. Dep't of Health and Human Servs., 13 F.3d 359, 361 (10th Cir. 1993)).  He notes that the requirement can be met even if the ALJ merely quotes vocational expert testimony favorably in his own findings at phase two of the step four determination.  Id. at 5 (citing Doyal, 331 F.3d at 760-61).  Plaintiff argues that the ALJ in this case made no on-the-record phase two findings at step four of the evaluation process, and that error requires remand.  Id. at 6.  Finally, he argues that "[e]ven if the findings made by the ALJ could be construed to show that he considered the mental and physical demands of security guard work as generally performed, there is no indication that he made an on-the-record finding regarding plaintiff's job of security guard as he actually performed it."  Id.

The Commissioner asserts that contrary to Plaintiff's argument otherwise, Plaintiff's "Disability Report-Adult" and the "Past Relevant Work Summary" prepared and submitted by the vocational expert provide sufficient record evidence to determine

the mental and physical demands of Plaintiff's past relevant work as a security guard. (Comm'r Br. 7) (citing R. 114-15, 127). The Commissioner acknowledges that the phase two finding at step four of the sequential evaluation must be an on-the-record finding of the demands of past relevant work, and that the finding may be satisfied where the ALJ quotes the vocational expert testimony approvingly in support of his own findings. (Comm'r Br. 7-8) (citing Winfrey and Doyal). She then argues that the ALJ "complied substantially with the requirement laid down in Winfrey and Doyal." Id. at 8. She argues that this is so because the ALJ assessed detailed limitations in Plaintiff's RFC and incorporated those limitations into a hypothetical question he presented to the vocational expert and the expert testified that an individual with those limitations could perform Plaintiff's past relevant work either as actually performed or as customarily performed. Id. She finally argues that the ALJ took this testimony by the vocational expert along with the other record evidence and determined that Plaintiff was capable of performing the job as a security guard as it is generally performed in the economy. Id. at 8-9.

### A.      Applying the Step Four, Three Phase Evaluation

As the parties agree, at step four of the sequential evaluation process, the ALJ is required to make specific findings in three phases. Winfrey, 92 F.3d at 1023 (citing SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983); Henrie, 13 F.3d at 361). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations." Winfrey, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant

15

work." <u>Winfrey</u>, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." <u>Id.</u>, 92 F.3d at 1023. These findings are to be made on the record by the ALJ. <u>Id.</u> at 1025; <u>see also</u>, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain . . . specific findings of fact" regarding each of the three phases).

The Tenth Circuit has explained that an ALJ may properly rely upon vocational expert (VE) testimony in making his findings at phase two and phase three of step four. <u>Doyal</u>, 331 F.3d at 761. The ALJ may not delegate the step-four analysis to the VE. He may, however, rely on information supplied by the VE regarding the demands of plaintiff's past relevant work and whether a person with plaintiff's RFC could meet those demands, and he may accept the VE's opinions. <u>Doyal</u>, 331 F.3d at 761. The critical distinction is whether the ALJ relied upon the VE testimony in making the findings or whether the ALJ delegated the phase two and phase three findings to the VE. <u>Id.</u> 331 F.3d at 761. Where the ALJ made the phase two and phase three findings and quoted the VE testimony approvingly in support of those findings, he has properly relied upon the VE testimony. <u>Id.</u>

## B. The ALJ's Findings

The ALJ made his RFC findings--phase one of the step four analysis--between step three and step four of the sequential evaluation process, as required by the regulations, and determined that Plaintiff has the RFC for light work with significant postural,

environmental, and mental limitations.  (R. 15-20).  He then made his step four finding

and analysis, which the court presents here in its entirety.

> The claimant is capable of performing past relevant work as a Security
> Guard.  This work does not require the performance of work-related
> activities precluded by the claimant's residual functional capacity (20 CFR
> 416.965).
>
> The claimant's past relevant work included the position of Security Guard
> (DOT 372.667-038; SVP 3; light).  The undersigned finds that the claimant
> performed this job within the past fifteen years and performed it long
> enough to learn the requirements of the job (Exh. B3E).  According to his
> earnings record, his wages during the period when he performed this job are
> consistent with a finding of substantial gainful activity (Exh. B5D).
>
> In comparing the claimant's residual functional capacity with the physical
> and mental demands of this work, the vocational expert testified, and the
> undersigned concurs, that the claimant is able to perform this job as
> generally performed.  Pursuant to SSR 00-4p, the vocational expert's
> testimony is consistent with the information contained in the Dictionary of
> Occupational Titles (DOT), though the undersigned has also relied upon his
> [the vocational expert's] extensive experience in vocational evaluation, job
> placement, and job site evaluation.

(R. 20) (bolding omitted).

### C.    Analysis

Both parties agree that the ALJ made on-the-record findings regarding phase one

(RFC) and phase three (whether Plaintiff can perform the job demands of past work as

found in phase two despite the RFC limitations found in phase one).  At issue here is

Plaintiff's contention that remand is necessary because the ALJ did not make on-the-

record findings regarding the demands of past relevant work as a security guard either as

it is generally performed, or (especially) as Plaintiff performed it.

Although Plaintiff implies that the record does not contain evidence of the physical and mental demands of work as a security guard, that implication is incorrect, at least in so far as it relates to security guard work as it is generally performed in the economy. As the Commissioner points out, the vocational expert prepared and provided a "Past Relevant Work Summary" in his testimony at the hearing. (R. 35). Moreover, as the Commissioner also points out, Plaintiff submitted a "Disability Report-Adult" into the record in which he identified the demands of his work as a security guard. (R. 114-15).

Despite the Commissioner's allegation of only "substantial compliance" with the requirement for an on-the-record finding, the court finds that the ALJ in fact made an on-the-record finding regarding the mental and physical demands of work as a security guard, at least as that work is generally performed in the economy. As quoted above the ALJ specifically identified the security guard job as "(DOT 372.667-038; SVP 3; light)." (R. 20) (quoted at page 17 supra). This information is contained in the administrative record in this case in the vocational expert's "Past Relevant Work Summary" which was provided with his testimony at the hearing. (R. 35). That summary noted that Plaintiff's work as a security guard had the DOT Code No. 372.667-038, and involved the mental demands of "skill level 3," and the physical demands of "light" work. (R. 127). Although the ALJ did not state "I find" the demands listed, he specifically noted the demands of work as a security guard as presented by the vocational expert and effectively adopted the findings of the expert. The court will require no more. Moreover, the ALJ specifically stated that he had compared the physical and mental demands of Plaintiff's

18

work as a security guard with the RFC assessed. (R. 20). He could not have made that comparison without first determining the physical and mental demands of the work. It is a reviewing court's general practice "to take a lower tribunal at its word when it declares that it has considered a matter," Hackett, 395 F.3d at 1172-73, and the court finds no reason here to depart from that practice. The ALJ stated the physical and mental demands of work as a security guard; he stated that he had compared those demands with the RFC assessed for Plaintiff, and the court will accept that assertion. Plaintiff makes no claim that the information itself is erroneous.

The court also finds, and the Commissioner admits, that the ALJ did not state findings in his decision regarding the specific demands of Plaintiff's past relevant work as he performed it. Plaintiff's "Disability Report" says little regarding the mental demands of his work as a security guard except that he did writing, or completed reports, and was a lead worker. However, despite the vocational expert's testimony that Plaintiff is able to perform the security guard work as Plaintiff actually performed it, the ALJ did not find that Plaintiff could do so, and that is likely because of the ambiguity regarding the mental demands of that work. Plaintiff argues that "there is no indication that [the ALJ] made an on-the-record finding regarding plaintiff's job of security guard as he actually performed it," and argues that this fact alone constitutes error requiring remand. (Pl. Br. 6); (Reply 4).

The court does not find error here. It would have been necessary for the ALJ to determine the specific demands of Plaintiff's work as he performed it if the ALJ were to

19

find that Plaintiff is able to perform that work.  Moreover, it would arguably have been

necessary for the ALJ to make an on-the-record finding regarding those demands in order

that the court might review the ALJ's finding that Plaintiff could perform the work, if the

ALJ had made such a finding.  However the ALJ here did not find that Plaintiff could

perform the work as he actually performed it.  Consequently, there was no need to specify

the demands of that work.  Here, the ALJ made a specific phase one finding regarding

Plaintiff's RFC, he made a specific phase two finding regarding the demands of

Plaintiff's past work as it is generally performed in the economy, and he made a specific

phase three finding that Plaintiff was able to meet the demands identified in phase two

despite the limitations identified in phase one.  Plaintiff provides no basis to require an

additional phase two finding which is irrelevant to the decision at issue, except to assert

that such a finding is required by both <u>Winfrey</u> and SSR 82-62.

     Neither <u>Winfrey</u> nor SSR 82-62 require such a thing.  In <u>Winfrey</u>, the court stated

that "[a]t each of these phases, the ALJ must make specific findings."  92 F.3d at 1023.

Later, in its phase three discussion, the court noted that in contrast to step five, it is

feasible at step four "for the ALJ to make specific findings about the mental and physical

demands of the jobs at issue and to evaluate the claimant's ability to meet those demands.

Requiring the ALJ to make specific findings on the record at each phase of the step four

analysis provides for meaningful judicial review."  <u>Winfrey</u>, 92 F.3d at 1025.  As quoted,

<u>Winfrey</u> requires an ALJ to make specific findings at each phase of the analysis for each

job "at issue."  Here the ALJ made specific findings at each phase of the step four

analysis for the only job "at issue"--the security guard job <u>as it is generally performed</u>. Those findings are sufficient to provide for meaningful judicial review.

SSR 82-62 provides even more clarity. That ruling states:

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

1.    A finding of fact as to the individual's RFC.

2.    A finding of fact as to the physical and mental demands of the past <u>job/occupation</u>.

3.    A finding of fact that the individual's RFC would permit a return to his or her past <u>job or occupation</u>.

SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 (emphases added). In the ruling, as emphasized above, phase two and phase three specifically contemplate a finding of fact as to either the job at issue or the occupation at issue. Here, the ALJ made his findings based upon the occupation as a security guard as generally performed and not based upon Plaintiff's job as he actually performed it. Plaintiff has shown no error in the ALJ's step four evaluation, and no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 17th day of July 2013, at Kansas City, Kansas.

<u>s:/ John W. Lungstrum</u>

21

John W. Lungstrum
United States District Judge